IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )    1:22-cr-154-7 (LMB) |
| TARRY JERON WILSON, | ) |
| | ) |
| Defendant. | ) |

ORDER

Before the Court is defendant Tarry Jeron Wilson's ("defendant" or "Wilson") Motion for Compassionate Release ("Motion") [Dkt. No. 197] under 18 U.S.C. § 3582(c)(1)(A), requesting that the Court "reduce his sentence and order him released to home confinement" because defendant suffers from epilepsy, which he claims has not been adequately treated in prison. Id. at 1. For the reasons that follow, defendant's Motion will be denied.

On April 3, 2023, Wilson pleaded guilty to one count of engaging in an animal fighting venture in violation of 7 U.S.C. §2156 and 18 U.S.C. §§ 49(a) and 371. [Dkt. No. 152]. On June 16, 2023, the Court sentenced Wilson to 24 months' imprisonment, with credit for time served; three years of supervised release; and a $100.00 special assessment. [Dkt. No. 175]. Because of Wilson's epilepsy, the Court recommended that "defendant [] be designated to the federal medical center in Butner, North Carolina or any other federal medical center as close to this area as possible." Id. Wilson was nevertheless designated to United States Penitentiary, Lewisburg ("USP Lewisburg") in Pennsylvania and began serving his sentence on July 25, 2023. [Dkt. No. 197] at 3. According to the Bureau of Prisons, he is scheduled to be released on April 6, 2025.[1]

---

[1] See Bureau of Prisons, Inmate Locator: Tarry Jeron Wilson (last visited Jan. 31, 2024), https://www.bop.gov/inmateloc/.

Having exhausted his administrative remedies, Wilson has now moved for early release because he "has had at least 11 seizures" since August 8, 2023 resulting from the Bureau of Prisons "not respond[ing] adequately to requests for medical care with provision of proper medication or treatment." Id. at 14. Pursuant to 18 U.S.C. § 3582(c)(1)(A), a court is authorized to reduce a defendant's term of imprisonment upon finding that "extraordinary and compelling reasons warrant such a reduction." Even if a defendant establishes an "extraordinary and compelling" reason for a sentence reduction or compassionate release, a court may only modify a sentence "after considering the factors set forth in section 3553(a)." Id.

That a "defendant is suffering from a medical condition that requires long term or specialized care that is not being provided and without which the defendant is at risk of serious deterioration in health or death," can be an "extraordinary and compelling" reason for compassionate release, U.S.S.G. § 1B1.13(b)(1)(C); however, a defendant must provide evidence to support a claim that his chronic condition cannot "be managed in prison." See United States v. Clayton, 2021 WL 2689838, at * 2 (E.D. Va. June 30, 2021) ("Also, it is generally true that 'chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.'"); United States v. Porter, 2021 WL 1561500, at *1 (W.D. Pa. Apr. 21, 2021) (explaining that defendant has the burden of proof to show "that extraordinary and compelling reasons exist, warranting his early and compassionate release from prison").

Wilson alleges that the Bureau of Prisons has not properly treated his epilepsy because Dr. Andrew Edinger, the doctor in charge of Wilson's care at USP Lewisburg, stopped prescribing Wilson oxcarbazepine, and, as such, he continues to suffer from seizures; however, the ongoing medical treatment that defendant has received in prison supports that Wilson's medical condition has been managed in prison. See United States v. Freeman, 617 F. Supp. 3d

2

386, 395 (E.D. Va. July 27, 2022) (finding that where the medical records support that "staff have managed [a defendant's] medical problems as they arose, closely monitored his status, prescribed him medication and adjusted his prescriptions as needed" this "cuts against any argument that the BOP cannot adequately care for him").

When Wilson arrived at USP Lewisburg, his seizures were not under full control, and he had not yet received a neurologist-requested electroencephalogram ("EEG") to fully assess his medical condition. [Dkt. No. 198-1] at 2. In examining Wilson and evaluating his medical records, Dr. Edinger chose to stop prescribing Wilson oxcarbazepine because that drug reduced the effectiveness of the other three seizure medications that Wilson was already taking and had a high potential for abuse in the prison setting. Id. Although Wilson claims to have continuous seizures since discontinuation of oxcarbazepine and has attached statements from inmates stating that they witnessed Wilson having these seizures, "each one of these events was not witnessed by any medical staff" and "each one of these events appeared to occur during highly suspicious times of the officers performing search duties." Id. Indeed, when he was placed in an isolation unit for nearly two weeks after testing positive for COVID, Wilson did not experience any seizures despite self-reporting seizures once a week before his isolation and continuous monitoring.[2] Id.

Moreover, because Wilson had not received an EEG before his imprisonment, to further

---

[2] This evidence is troubling considering that, in the past, in claiming that Wilson was incompetent to stand trial, both Wilson and his girlfriend told a psychologist that Wilson's memory was so bad that he could not understand what was going on around him; however, at that same time, evidence showed Wilson making statements to other dogfighters on what he believed was a private encrypted Telegram group; long conversations with another dogfighter that Wilson did not know were being overheard by government agents; and a video from 2020 found on Wilson's phone which showed him driving a fighting dog in his truck. Because this evidence undermined the credibility of the representations made by Wilson and his girlfriend, the Court found Wilson was competent to stand trial.

3

analyze Wilson's medical needs, Dr. Edinger ordered an EEG. In reviewing the results of the EEG, Dr. Edinger noted that the results were "completely normal" and did not support the prescription of any additional medication. Id. Ultimately, in continuously evaluating Wilson, Dr. Edinger has found that Wilson's "health today is stable and only notable for an elevation of his blood pressure," his "condition is not worsened or placed in jeopardy by his current conditions of imprisonment," and "his condition is not beyond the care level abilities of this institution." [Dkt. No. 198-1]. Accordingly, because the record supports that Wilson's condition is "manageable in prison," Carroll, 2021 WL 4860928, at *2, defendant's epilepsy is not sufficiently "extraordinary and compelling" to warrant a reduction in Wilson's sentence, and it is hereby

ORDERED that Tarry Jeron Wilson's Motion for Compassionate Release [Dkt. No. 197] be and is DENIED.

The Clerk is directed to forward copies of this Order to counsel of record.

Entered this 1st day of February, 2024.

Alexandria, Virginia

/s/ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Leonie M. Brinkema
United States District Judge